# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROUNDHILL CONDOMINIUM ASSOCIATION, | : | |
| | : | CIVIL ACTION |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| NVR, INC., | : | No. 19-442 |
| *Defendant*. | : | |

## MEMORANDUM

PRATTER, J.                                                                                                                                              JULY 19, 2019

The Roundhill Condominium Association asserts claims, on behalf of itself and all individual unit owners, against NVR, Inc. trading as Ryan Homes—the developer of the Roundhill Condominium—concerning the Condominium's alleged defective construction. The Association's claims include: breach of covenant (Count I), breach of contract (Count II), unjust enrichment (Count III), fraud in the inducement (Counts IV and VI), breach of express warranty (Count V), breach of statutory warranties (Count VII), breach of implied warranties (Count VIII), negligent construction (Count IX), negligent supervision (Count X), violation of Pennsylvania's Uniform Trade Practices and Consumer Protection Law ("UTPCPL") (Count XI), fraud (Count XII), and negligent misrepresentation (Count XIII).

NVR moves for the dismissal of several of the Association's claims. It argues that:

(1) the unjust enrichment claim should be dismissed because the conduct at issue is governed by written agreements between the parties;

(2) the fraud in the inducement claims are barred by Pennsylvania's parol evidence rule;

(3) the tort claims—including the negligent construction, negligent supervision, fraud, and negligent misrepresentation claims—are barred by the gist of the action doctrine and the economic loss rule; and

1

(4) the Association does not have standing to bring a claim under the UTPCPL because it did not purchase goods or services from NVR.

The Court will dismiss the Association's unjust enrichment claim because both parties agree that written agreements govern their relationship, and neither party disputes the validity of those agreements. The Court will also dismiss the Association's fraud in the inducement, fraud, and negligent misrepresentation claims because these claims are barred by the parol evidence rule and because the fraud and negligent misrepresentation claims are barred by the gist of the action doctrine. Although the Association's negligent construction and supervision claims are not barred by the gist of the action doctrine, these claims—as currently pleaded—are barred by the economic loss rule. Therefore, the Court will dismiss the negligent construction and supervision claims but will grant the Association leave to amend those two claims. Finally, the Court will dismiss the Association's UTPCPL claim because it does not have standing to bring such a claim. The remaining claims permitted to proceed are the breach of covenant, breach of contract, breach of express warranty, breach of statutory warranties, and breach of implied warranties claims.

## BACKGROUND

In 2006, NVR worked with another developer, EGTC, L.P., to design and construct the Roundhill Condominium, a 201-unit condominium in Valley Township, Pennsylvania. Compl. at ¶ 11. In February 2007, NVR and EGTC issued a "Public Offering Statement," which the Association contends contained certain warranties to potential purchasers. *Id.* at ¶ 17. In March 2007, NVR and EGTC formally created the Condominium by recording a "Declaration of Condominium," which the Association claims included additional representations to potential purchasers. *Id.* at ¶¶ 22–23.

Thereafter, NVR began selling units to individual buyers. Each sale of a unit was governed by a written contract.[1] *Id.* at ¶¶ 29–30.

After the Association assumed management of the Condominium, it commissioned a "transition report." *Id.* at ¶ 32. Allegedly, this report revealed several defects with the Condominium, including construction defects in the buildings' roofs. *Id.* at ¶ 33. Follow up reports in 2016 allegedly revealed additional defects, including defects in the stone cladding on the exterior of the buildings. *Id.* at ¶¶ 36–40. These defects allegedly led to water intrusion throughout the Condominium and resulted in hazardous rotting and mold growth in individual units. *Id.* at ¶ 140.

In January 2019, the Association filed this lawsuit against NVR, on behalf of itself and all unit owners, in Pennsylvania state court. In February 2019, NVR removed the case to federal court and filed the pending partial motion to dismiss.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). However, "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original).

---

[1] The Association alleges that NVR used two different form agreements for the sales of units. It attached to the Complaint the later version used by NVR, but it claims that it did not have access to the earlier version at the time it filed the Complaint. *Id.* at ¶ 30.

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation and quotations omitted).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Twombly*, 550 U.S. at 555 (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"). Also, the Court must accept as true all reasonable inferences emanating from the allegations and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010).

That admonition does not demand that the Court ignore or discount reality. The Court "need not accept as true unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000) (citations and internal quotation marks omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions") (citations omitted).

## DISCUSSION

The Court addresses the following: (1) whether the written agreements between the parties bar the Association's unjust enrichment claim; (2) whether the parol evidence rule bars the Association's claims for fraudulent inducement, fraud, and negligent misrepresentation; (3) whether the gist of the action doctrine and the economic loss rule bar the Association's tort claims; and (4) whether the Association has standing to bring a claim under the UTPCPL.

### I.  Unjust Enrichment (Count III)

The Association claims that "[i]f and to the extent that the covenants, representations and contracts between the Association and its members and [NVR] are found not to be valid and enforceable agreements, then the Association and its members are nevertheless entitled to recover damages from [NVR] under the theory of unjust enrichment."  Compl. at ¶ 96.  In turn, NVR argues that the Association's unjust enrichment claim should be dismissed because "the conduct at issue is governed by express contracts."  Mot. to Dismiss at 6.

Unjust enrichment is a "quasi-contractual doctrine that does not apply in cases where the parties have a written or express contract." *Premier Payments Online, Inc. v. Payment Sys. Worldwide*, 848 F. Supp. 2d 513, at 527 (E.D. Pa. 2012) (citing *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987)).  Nevertheless, "a party may plead alternative theories of breach of contract and unjust enrichment *when there is a dispute about the existence or validity of the contract in question*." *Power Restoration Int'l, Inc. v. Pepsico, Inc.*, No. 12-1922, 2013 U.S. Dist. LEXIS 148016, at *20 (E.D. Pa. Oct. 11, 2013) (citations and quotations omitted) (emphasis added).  In *Power Restoration Int'l*, although the parties admitted that there was an express agreement governing their relationship, this Court did not dismiss the plaintiff's unjust enrichment claim in that case because it was unclear if the defendants would later contest the validity or enforceability of that agreement. *Id.* at *20.

In this case, however, both parties agree that express agreements govern the sale of the condominium units and, unlike in *Power Restoration In'tl*, NVR assured the Court during oral argument that it would not be challenging the validity of those agreements. Therefore, the Court will dismiss the Association's unjust enrichment claim. *See Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 170 n.8 (3d. Cir. 2014) ("Here, [the parties] had a contractual relationship, the existence and validity of which are not challenged. Thus, [the plaintiff's] claim for unjust enrichment, even when pled in the alternative, was appropriately dismissed."). The dismissal is without prejudice, and the Association may assert an unjust enrichment claim in the future should NVR challenge the validity of the agreements.

## II. The Parol Evidence Rule

### A. *Fraud in the Inducement (Counts IV and VI)*

Although the Association brings two fraud in the inducement claims, they are based on similar allegations. The Association claims that NVR, "knowing [it] had no intention of honoring the promises in the Public Offering Statement, Declaration, express warranties and agreements of sales, represented to the Unit Owners . . . that the [the Condominium was] . . . constructed in accordance" with the codes and standards stated in these documents and generally acceptable construction and engineering practices. Compl. at ¶ 101. It further claims that NVR made these misrepresentations knowingly or recklessly, intending to induce the unit owners to enter into agreements of sale. *Id.* at ¶ 104

NVR argues that the Association's claims for fraud in the inducement are barred by the parol evidence rule. The Court agrees.

Pennsylvania's parol evidence rule has been described as follows:

> Where the parties to an agreement adopt a writing as the final and
> complete expression of their agreement, . . . evidence of negotiations

> leading to the formation of the agreement is inadmissible to show an intent at variance with the language of the written agreement. Alleged prior or contemporaneous oral representations or agreements concerning subjects that are specifically dealt with in the written contract are merged in or superseded by that contract. . . . Thus the written contract, if unambiguous, must be held to express all of the negotiations, conversations, and agreements made prior to its execution, and neither oral testimony, nor prior written agreements, or other writings, are admissible to explain or vary the terms of the contract.

*Peruto v. Santander Bank, N.A.*, No. 16-4092, 2016 U.S. Dist. LEXIS 146607, at *7 (E.D. Pa. Oct. 24, 2016) (citing *1726 Cherry St. P'ship v. Bell Atl. Props., Inc.*, 653 A.2d 663 (Pa. Super. Ct. 1995)). The parol evidence rule bars alleged prior representations "where the written agreement (1) contains terms which directly deal with the subject matter of the alleged . . . representation; and (2) represents the entire contract between the parties, particularly where the written agreement also contains an integration clause." *Id.* at *7–8 (citation omitted).

Here, after NVR allegedly misrepresented that the unit owners would have more extensive warranties, the unit owners signed contracts governing the sales of the units. The version of the contract attached to the Complaint contained a "Limited Warranty" clause, which stated:

> "THE LIMITED WARRANTY OF THIS AGREEMENT IS THE ONLY WARRANTY APPLICABLE TO THE PROPERTY."

Exhibit D to Compl. at ¶ 4. This version of the contract also contained a limitations clause, which stated:

> "PURCHASER AND SELLER COVENANT AND AGREE THAT ANY AND ALL CLAIMS ARISING OUT OF OR RELATING TO THE SUBJECT MATTER OF THIS AGREEEMENT . . . SHALL BE GOVERNED BY A ONE (1) YEAR LIMITATION OF ACTION PERIOD . . . ."

*Id.* at ¶ 14. Finally, this version of the contract contained express merger and integration clauses. For example, paragraph 29 stated that:

7

> <u>This Agreement and the following listed documents are incorporated by reference and constitute the entire and final Agreement.</u> No other prior or contemporaneous agreements, representations, promises or terms (written or oral) are part of this agreement, but are superseded by this written Agreement.

*Id.* at ¶ 29 (emphasis in original).

In opposition to NVR's motion to dismiss, the Association argues that "[t]his is not a situation where a plaintiff is relying solely on oral and/or written communications made *prior* to the contract to prove the defendant fraudulently induced the plaintiff," because the Public Offering Statement, the Declaration, and NVR's binder of express warranties "existed both before *and* remain operative *after* the execution of the agreement of sale." The Association's Resp. to Mot. to Dismiss at 8 (emphasis in original). However, shortly thereafter, the Association states that these documents and the representations contained therein "fraudulently induced the home buyers to sign the agreements of sale." *Id.* This latter statement cannot be reconciled with the Association's argument that it is not relying on prior communications to prove that the defendant fraudulently induced the unit owners. What the Association "seek[s] to do is exactly what the Pennsylvania parol evidence rule forbids: to admit evidence of a prior representation in a fully integrated written agreement." *1726 Cherry St. P'ship*, 653 A.2d at 670.

In a last attempt to salvage its fraudulent inducement claims, the Association cites *Toy v. Metro. Life Ins. Co.*, which states that "parol evidence may be introduced to vary a writing meant to be the parties' entire contract, when a party avers that the contract is ambiguous or that a term was omitted from the contract because of fraud, accident or mistake." 928 A.2d 186, 204 (Pa. 2007). The Association does not claim that the disputed warranties were fraudulently omitted from the sales agreements, i.e., it does not allege "fraud in the execution." And it does not allege that the contract provisions are difficult to understand or could be interpreted in different ways.

8

The Association does, however, claim that the sales contract is ambiguous because it contradicts the warranties conferred on the home buyers in other documents. But permitting this type of argument—i.e., saying that a contract is ambiguous because it conflicts with earlier representations—would allow the ambiguity exception to swallow the parol evidence rule. Therefore, the Association's fraud in the inducement claims are barred by the parol evidence rule, and the Court dismisses these claims. *See Peruto*, 2016 U.S. Dist. LEXIS 146607, at *7 (barring fraud in the inducement claims where the parties' agreement directly dealt with the alleged misrepresentations and had an integration clause); *Interwave Tech., Inc. v. Rockwell Automation, Inc.*, No. 05-398, 2005 U.S. Dist. LEXIS 37980, at *55 (E.D. Pa. Dec. 30, 2005) (same).

### B. *Fraud (Count XII)*

The Association asserts a separate "fraud" claim, alleging that NVR:

> [M]ade representations to the Unit Owners that the Condominium was reasonably fit for its intended purpose, was free of latent and concealed defects, was built in a workmanlike manner, and that the Condominium was constructed in accordance with the Public Offering Statement, agreement(s) of sale, Declaration, Plats & Plans and specifications for the Condominium and all applicable building codes and industry standards.

Compl. at ¶ 173. It further alleges that these representations were material to the purchase and sale of the units, were false, and were made for the purpose of misleading the unit owners into purchasing their units. *Id.* at ¶ 174–76.

Although NVR does not make this argument, the only apparent difference between the Association's fraudulent inducement claims and the Association's fraud claim is the title. Nothing in the Complaint distinguishes the "fraud" claim or suggests that it involves alleged fraud in the performance of the contract as opposed to fraud in the inducement, and the Association's counsel admitted during oral argument that the fraud claim is "very much related" to the fraud in the

9

inducement claims. Therefore, the Association's fraud claim is also barred by the parol evidence rule and is dismissed.[2]

### C. Negligent Misrepresentation (Count XIII)

Similarly, the Association alleges that NVR "negligently misrepresented the adequacy of the design and construction of the [Condominium]." Compl. at ¶ 183. It further alleges that NVR made these misrepresentations with intent to induce the unit owners to purchase units. *Id.* at ¶ 184.

"[U]nder Pennsylvania law, the [parol evidence] rule applies to fraudulent inducement, fraudulent misrepresentation, *and negligent misrepresentation claims.*" *De Lage Landen Fin. Servs. v. Barton Nelson, Inc.*, No. 08-530, 2008 U.S. Dist. LEXIS 91441, at *13–14 (E.D. Pa. Nov. 4, 2008) (citation omitted); *see also Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc.*, 94 F. Supp. 2d 589, 595 (E.D. Pa. 1999) ("The difference between fraud and negligent misrepresentation, namely a state of mind requirement for the fraud claim, does not affect the rationale behind Pennsylvania's parol evidence rule.") (citations omitted). Therefore, the Association's negligent misrepresentation claim is also barred by the parol evidence rule and is dismissed.

## III. The Gist of the Action Doctrine and the Economic Loss Rule

The Association also brings claims for negligent construction and negligent supervision. NVR argues that these claims, along with the Association's claims for fraud and negligent misrepresentation discussed above, should be barred by the gist of the action doctrine and/or the economic loss rule.

---

[2] NVR also argues that the Association's "fraud" claim should be dismissed because it is not pleaded with the requisite particularity. Because the Court is dismissing the "fraud" claim pursuant to the parol evidence rule, it need not address this argument.

## A. The Gist of the Action Doctrine

The gist of the action doctrine "precludes plaintiffs from recasting ordinary breach of contract claims into tort claims." *Jones v. ABN AMRO Mortg. Group. Inc.*, 606 F.3d 119, 123 (3d Cir. 2010) (citation omitted). As the Pennsylvania Supreme Court has explained:

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Bruno v. Erie. Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014) (citations omitted). Accordingly, the gist of the action doctrine bars tort claims: (1) arising solely from the contractual relationship between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of the tort claim is wholly dependent on the terms of the contract. *KBZ Communs. Inc. v. CBE Techs. LLC*, 634 F. App'x 908, 911 (3d Cir. 2015) (citation omitted).

The Court first considers whether the gist of the action doctrine bars the Association's fraud and negligent misrepresentation claims. It then considers whether the doctrine bars the Association's negligent supervision and negligent construction claims.

### 1. <u>The Gist of the Action Doctrine Provides An Alternative Reason to Dismiss the Association's Claims for Fraud (Count XII) and Negligent Misrepresentation (Count XIII)</u>

The gist of the action doctrine provides an alternative reason to dismiss the Association's fraud and negligent misrepresentation claims. In its fraud claim, the Association alleges that NVR

"made representations to the Unit Owners that the Condominium was reasonably fit for its intended purpose, was free of latent and concealed defects, [and] was built in a workmanlike manner." Compl. at ¶ 173. Similarly, in its negligent misrepresentation claim, the Association alleges that NVR "negligently misrepresented the adequacy of the design and construction of the [Condominium]." *Id.* at ¶ 183. These claims are substantially similar to the Association's breach of contract claim, in which it alleges that NVR "breached the agreement of sale with all original purchasers, by failing to construct and complete the [Condominium] as represented." *Id.* at ¶ 92.

The obligation to provide a certain kind of condominium—i.e., one that was free of defects and built in a workmanlike manner—is not a broad social duty. Rather, that duty was imposed by the contract between the parties. *See Pansini v. Trane Co.*, No. 17-3948, 2018 U.S. Dist. LEXIS 36089, at *16 (E.D. Pa. Mar. 6, 2018) (dismissing fraudulent misrepresentation claim pursuant to the gist of the action doctrine because the defendants' obligation to provide a certain kind of air conditioning unit was imposed by contract, not by some social duty). As this Court explained in *Pansini*, "[t]o conclude that the gist of this case sounds in tort would open the door to absurd results: a claim would exist for fraudulent (or at least negligent) misrepresentation for every promise made during contract negotiations, incorporated [or not] into a contract, and subsequently breached." *Id.* at *17. Therefore, the gist of the action doctrine bars the Association's fraud and negligent misrepresentation claims.

  2. *The Association's Claims for Negligent Construction (Count IX) and Negligent Supervision (Count X) Are Not Barred by the Gist of the Action Doctrine*

In its negligent construction claim, the Association alleges that NVR "owed a duty to the Association and its members, independent of and supplemental to any contractual duties, to exercise such reasonable care, technical skill and ability and diligence as are ordinarily required of builders and contractors in the course of designing, building and constructing a residential

12

condominium." Compl. at ¶ 146. Similarly, in its negligent supervision claim, the Association alleges that NVR "owed a duty to the Association and its members, independent of and supplemental to any contractual duties, to exercise such reasonable care, technical skill and ability, and diligence as are ordinarily required of builders . . . in the course of hiring contractors, subcontractors, and suppliers and in supervising and inspecting the work and materials provided to the Condominium." *Id.* at ¶ 152. The Association claims that NVR breached these duties.

These claims—unlike the fraud and negligent misrepresentation claims—explicitly focus on duties arising outside of the contract. In this regard, the claims are similar to those permitted by the Supreme Court of Pennsylvania in the venerable case *Zell v. Arnold*, 2 Pen. & W. 292 (Pa. 1830), which was recently reaffirmed by the Supreme Court of Pennsylvania in *Bruno* only five years ago. 106 A.3d 62–63.

In *Zell*, the plaintiff contracted with the defendant to construct a mill on the plaintiff's land. *Bruno*, 106 A.3d at 62 (citing *Zell*, 2 Pen. & W. 292). The defendant built the mill in a way that inhibited water from flowing to the mill. The plaintiff sued the defendant for negligence, and the Supreme Court of Pennsylvania held that the existence of a contract between the parties did not render it an action for breach of contract. *Id.*

In *Bruno*, the Supreme Court of Pennsylvania summarized *Zell* and explained that "the mere existence of a contract between two parties does not, *ipso facto*, classify a claim by a contracting party for injury or loss suffered as the result of actions of the other party in performing the contract as one for breach of contract." *Id.* at 69; *see also DePuy Synthes Sales, Inc. v. Globus Med., Inc.*, 259 F. Supp. 3d 225, 234 (E.D. Pa. 2017) (citing *Bruno*, 106 A.3d at 69). To the contrary, "the *nature* of the duty breached, as alleged in the plaintiff's pleadings, is determinative of the gist of the action." *Bruno*, 106 A.3d at 63 (emphasis in original). Hence, "actions arising

13

'directly' from an alleged breach of a contractual duty [are] to be regarded as being in contract; whereas, those actions based on an alleged breach of a contracting party's separate 'collateral' duty to perform a contractual obligation with skill and diligence [are] to be considered as being in tort." *Id.*

Here, although, the Association claims that NVR committed negligent acts *while* performing its contractual obligations to the unit owners, these claims are predicated on social duties that arise separately from the contracts between the parties, such as a builder's general obligation to supervise its sub-contractors and not to construct residences negligently. Therefore, the gist of the action doctrine does not bar the Association's claims for negligent construction or negligent supervision.

### B. *The Economic Loss Rule*

NVR also argues that the Association's tort claims should be barred by the economic loss rule, pursuant to which "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical or property damage." *Pansini*, 2018 U.S. Dist. LEXIS 36089, at *10 (citing *Adams v. Copper Beach Townhome Cmtys., L.P.*, 816 A.2d 301, 305 (Pa Super. Ct. 2003)). Although the economic loss rule originated in products liability law, it is applicable in other contexts, including construction defects claims. *See Am. Stores Props., Inc. v. Spotts, Inc.*, 648 F. Supp. 2d 707, 712–13 (E.D. Pa. 2009) (applying economic loss rule to bar negligence claims arising out of the defective design and construction of retaining walls).

Economic loss has been defined as "damage for inadequate value, costs of repair and replacement of defective product, consequential loss of property, *without any claim of personal injury or damage to other property*." *Id.* (citation and quotations omitted) (emphasis in original). "Other property" has been defined as "property other than the project which is the basis of the

14

bargain of the contract." *Developers Sur. & Indem. Co. v. Mathias*, No. 12-2216, 2013 U.S. Dist. LEXIS 173973, at *21 (M.D. Pa. Dec. 11, 2013) (citing cases); *see also Longport Ocean Plaza Condo., Inc. v. Robert Cato & Assocs., Inc.*, No. 00-2231, 2002 U.S. Dist. LEXIS 4609, at *13–16 (E.D. Pa. Mar. 18, 2002) (holding that damage to the building that was the basis of the bargain with the defendant did not constitute damage to other property) (citing cases).

In its negligence claims, the Association alleges only that "significant harm has and will result to the Association and its members, as the Association has been and will be compelled to expend Association funds to remedy the defects and deficiencies and the costs of such expenditures shall be borne by the Unit Owners in the form of increased dues and Condominium assessments." Compl. at ¶¶ 149, 155. These claims for costs of repair fall squarely within the definition of economic loss discussed above, and the Association does not allege that any other property, i.e., something other than the Condominium's buildings, has been damaged.

In an attempt to avoid the economic loss rule, the Association cites one paragraph in its Complaint which states that NVR's defective design and construction contributed to "the presence of mold in individual Units, which has affected the health and safety of some individual Unit Owners." Compl. at ¶ 140. However, this reference to personal health effects suffered by individual unit owners is vague and unsupported by any factual allegations.[3] Moreover, the Association does not ask for damages stemming from the unit owners' alleged health problems in either of its negligence claims. *See* Compl. ¶ 143–156. Therefore, as currently pleaded, the Association's negligent supervision and construction claims are barred by the economic loss rule.

---

[3] During oral argument, the Association's counsel admitted that its allegations concerning mold and the negative health effects suffered by the unit owners "are not the most detailed and concise allegations."

15

However, the Court dismisses these claims without prejudice, and the Association may amend them to address the deficiencies highlighted above.

**IV.     Uniform Trade Practices and Consumer Protection Law (Count XI)**

The Association also asserts a claim pursuant to the UTPCPL, 73 Pa C.S.A. § 201, *et seq*. NVR argues that the Association lacks standing to bring such a claim. The Court agrees.

In relevant part, the UTPCPL provides as follows:

> Any person *who purchases or leases goods or services* primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100.00), whichever is greater.

73 Pa C.S.A. § 201-9.2(a) (emphasis added). As the Third Circuit Court of Appeals has stated, "[t]he statute unambiguously permits only persons who have purchased or leased goods or services to sue. . . . Had the Pennsylvania legislature wanted to create a cause of action for those not involved in a sale or lease, it would have done so." *Balderston v. Medtronic Sofamor Danek, Inc.*, 285 F.3d 238, 241 (3d Cir. 2002) (citation omitted).

It is undisputed that the individual unit owners—not the Association—purchased the Condominium units at issue in this case. Although the UTPCPL's language reserves standing for parties that have bought or leased a good or service, the Association relies on a separate Pennsylvania statute—the Uniform Condominium Act—for the proposition that it has standing to sue on the individual unit owners' behalf. The Condominium Act states that an association may "[i]nstitute, defend, or intervene in litigation . . . in its own name on behalf of itself or two or more unit owners on matters affecting the condominium." 68 Pa. C.S.A. § 3302(a)(4).

However, this District and several Pennsylvania courts have already rejected the Association's argument. In *Country Classics at Morgan Hill Homeowners' Ass'n v. Country Classics at Morgan Hill, LLC*—like in this case—a condominium association asserted a UTPCPL claim on behalf of individual unit owners against a condominium developer concerning the condominium's alleged structural defects. 780 F. Supp. 2d 367 (E.D. Pa. 2011). The court explained that the association "neither claim[ed] that it contracted with another party to provide goods or services for the unit owners' benefit, nor that it is the third-party beneficiary of any contract entered into by [the defendant] for goods or services." *Id.* at 374–76. Therefore, the court dismissed the condominium association's UTPCPL claim because the association was "not a purchaser acting in its representative capacity and [could] not maintain a private action under the UTPCPL." *Id.* at 376; s*ee also Coronado Condo. Ass'n, Inc. v. Iron Stone Coronado, L.P.,* No. 2691, 2005 Phila Ct. Com. Pl. LEXIS 491, at \*3 (Phila. Ct. Com. Pl. Nov. 7, 2005) (holding that a condominium association may not bring a UTPCPL claim based solely on its representation of unit owners); *Greencort Condo. Ass'n v. Greencort Partners*, No. 4045, 2004 Phila. Ct. Com. Pl. LEXIS 58, at \*8 (Phila Ct. Com. Pl. Apr. 30, 2004) (concluding that a condominium association is not a purchaser under the UTPCPL by virtue of its responsibilities in "administering the affairs and interests of the unit owners") (citing *Balderston*, 285 F.3d at 241).

The Association also relies on *Valley Forge Towers South Condo. v. Ron-Ike Foam Insulators, Inc.*, 574 A.2d 641, 645–47 (Pa. Super. Ct. 1990) (permitting a condominium association to bring a UTPCPL claim on behalf of individual unit owners against a manufacturer of roof materials). However, *Valley Forge* is easily distinguished because the court's determination that the condominium association was a purchaser for purposes of the UTPCPL was based on the fact that the association directly contracted with a roof subcontractor, who in turn

contracted with the defendant. *Id.* at 646–47. Moreover, the defendant issued a warranty directly to the condominium association. Therefore, the court concluded that "the Condominium Association's purchase of the roof from the [contractor], which was warranted directly by [the defendant], was a 'purchase' giving rise to liability on the part of the manufacturer under the Pa. U.T.P.C.P.L." *Id.* at 647.

No such scenario exists here because the Association has not alleged that it purchased the units from NVR, either directly or indirectly. Therefore, the Court dismisses NVR's UTPCPL claim.

## CONCLUSION

For the reasons set out in this Memorandum, the Court grants NVR's Partial Motion to Dismiss. An appropriate order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE